Kenneth A. Feinswog (California Bar No. 129562)
400 Corporate Pointe, Suite 300
Culver City, CA 90230
kfeinswog@gmail.com
Telephone: (310) 846-5800

Attorney for Plaintiffs

IN UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stensrud, Inc., a Tennessee corporation, and Benito Antonio Martinez Ocasio a/k/a Bad Bunny,<br><br>    Plaintiffs,<br><br>v.<br><br>Various John Does, Jane Does and ABC Companies,<br><br>    Defendants. | No. CV-<br><br>COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION |

1. This Court has exclusive jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. §§1121, 1125, 1126 and 1116. This action arises under the Lanham Trademark Act (15 U.S.C. §1051, et seq.).

2. Plaintiff Stensrud, Inc. is a corporation duly organized under the laws of Tennessee with its principal place of business in Tennessee. Plaintiff Benito Antonio Martinez Ocasio a/k/a Bad Bunny ("Bad Bunny") is a resident of Puerto Rico.

3. Upon information and belief, Defendants Various John Does and Jane Does are residents of or transact and do business in and/or will be present in Phoenix, Arizona on and

1

before February 27 and 28, 2024 or are now conspiring to travel and otherwise traveling to the other states listed in Schedule A hereto and are subject to the jurisdiction of this Court. The identities of the Various John Does and Jane Does are not presently known.

4. Upon information and belief, Defendants ABC Companies, through their agents, servants and employees, transact and do business in and/or will be present in Phoenix, Arizona on and before February 27 and 28, 2024 or are now conspiring to travel and otherwise traveling to other states listed in Schedule A hereto and are subject to the jurisdiction of this Court. The identities of the ABC Companies are not presently known.

## THE PARTIES

5. Since as early as 2016, Bad Bunny has used the BAD BUNNY trademark to identify himself in all phases of the entertainment industry and to distinguish himself from other professional musical performers and has obtained a trademark registration therefor, Registration No. 7245510.

6. Bad Bunny owns the exclusive right to market merchandise, including, but not limited to, clothing, jewelry, photographs and posters bearing the BAD BUNNY name, trademark, logos, and/or likeness at concert engagements throughout the United States. He has granted the exclusive rights to Stensrud, Inc. ("Stensrud") to sell or license the sale of that merchandise on his 2024 concert tour.

7. Defendants are numerous independent unlicensed peddlers and manufacturing and distributing companies who will be attempting to distribute and sell unauthorized bootleg and inferior merchandise embodying the BAD BUNNY name, trademark, logos and/or likeness (hereinafter referred to collectively as "Bootleg Merchandise") including, but not limited to, t-shirts outside the confines of the Footprint Center, Phoenix, Arizona on February 27 and 28, 2024 and at other Bad Bunny concerts on his present concert tour, a partial itinerary of which is listed on Exhibit A hereto, in violation of Plaintiffs' rights under the Lanham Act. The identities of Defendants are not presently known and cannot be known unless they voluntarily permit themselves to be identified.

**BACKGROUND**

8. To date, in excess of three million copies of recordings embodying the performances of Bad Bunny have been sold.

9. To date, in excess of Fifty Million Dollars' worth of licensed merchandise bearing the BAD BUNNY name, trademark, logos and/or likeness have been sold.

10. Since as early as 2016, Bad Bunny has used the BAD BUNNY mark to identify his services as a musical performer. Bad Bunny has sought to distinguish merchandise pertaining to him from merchandise made and sold and pertaining to others by prominently displaying the BAD BUNNY trademark and/or likeness on t-shirts and other merchandise items associated with Bad Bunny.

11. Bad Bunny will be commencing a concert tour of the United States. Virtually all of those concerts are or will be sold out. The BAD BUNNY concert itinerary, in part, is annexed hereto as Exhibit A.

12. Based upon what has occurred on this and prior tours, it can be stated with certainty that outside the concert halls at which BAD BUNNY is performing, before, during and after his appearances, Defendants will attempt to sell imitation and inferior Bootleg Merchandise.

13. The sale of the Bootleg Merchandise by Defendants is and will be without Plaintiffs' permission or authority.

14. This unlawful activity results in irreparable harm and injury to Plaintiffs in that, among other things, it deprives Plaintiffs of their absolute right to determine the manner in which the BAD BUNNY image is presented to the general public through merchandising; deceives the public as to the origin and sponsorship of such merchandise; wrongfully trades upon and cashes in on Plaintiffs' reputations as well as their commercial value and exclusive rights in the BAD BUNNY trademark, and it irreparably harms and injures their reputations.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Violation of 15 U.S.C. §1125(a)**

15. Plaintiffs repeat and reallege paragraphs 1 through 14 of this Complaint as if fully set forth herein.

16. This count arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition entitled "False Designation of Origin and False Descriptions Forbidden," 15 U.S.C. §1125(a), and involves false descriptions in commerce.

17. The BAD BUNNY trademark, likeness and logos have been used widely throughout the United States. As a result of that extensive use, the BAD BUNNY trademark, likeness and logos have developed and now have a secondary and distinctive trademark meaning to purchasers of goods including, but not limited to, t-shirts.

18. The Bootleg Merchandise sold by Defendants, which contains the BAD BUNNY likeness, logos and/or trademark is of the same general nature and type as the merchandise sold and/or authorized to be sold by Plaintiffs. Because the Bootleg Merchandise is so related to and indistinguishable from authorized merchandise that Plaintiffs sell, it is likely to, and is certainly intended to, cause confusion to purchasers.

19. Defendants, by misappropriating and using the BAD BUNNY trademark, likeness and logos, have misrepresented and falsely described to the general public the origin and source of the Bootleg Merchandise so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Bootleg Merchandise sold at Bad Bunny concert dates.

20. In addition, Defendants' sale of the Bootleg Merchandise will infringe upon and dilute the BAD BUNNY trademark and logos.

21. The Bootleg Merchandise is in most instances of inferior quality and the sale thereof will be damaging to and will dilute the goodwill generated by Plaintiffs and the reputations that Plaintiffs have developed in connection with the sale of legitimate and quality merchandise.

22. Defendants' unlawful merchandising activities have been and will be conducted without Plaintiffs' permission or authority and those actions constitute express and implied misrepresentations that the Bootleg Merchandise was created, authorized or approved by Plaintiffs. Defendants have not obtained any license, authority or approval to manufacture, distribute or sell such Bootleg Merchandise.

23. Defendants' acts are in violation of 15 U.S.C. §1125(a) in that Defendants will use, in connection with goods and services, a false designation of origin and have caused and will continue to cause those goods (the Bootleg Merchandise) to enter into interstate commerce.

24. Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, will suffer irreparable harm and injury to Plaintiffs' images and reputations as a result thereof.

**DAMAGES**

25. Plaintiffs repeat and reallege paragraphs 1 through 14 and 16 through 24 of this Complaint as if fully set forth herein.

26. It is impossible to ascertain the amount of compensation that will afford Plaintiffs adequate relief for Defendants' actual, threatened and contemplated unlawful activities and Plaintiffs will have no adequate remedy in the event that such unlawful activities are allowed to occur.

WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

1. The Court issue a Temporary Restraining Order and a Preliminary Injunction restraining, enjoining and prohibiting Defendants from manufacturing, distributing or selling all merchandise bearing the BAD BUNNY name, trademark, logos and/or likeness and/or anything confusingly similar thereto.

2. The Court order the United States Marshal(s), state county and/or local law enforcement authorities to seize and impound any and all of the merchandise described in subdivision 1 above, which the Defendants attempt to sell or hold for sale outside of and within the confines of the concert halls at which Bad Bunny is performing before, during or after Bad Bunny concert performances.

3. After a hearing on the merits, this Court issue a Permanent Injunction prohibiting Defendants from selling or attempting to sell merchandise described in subdivision 1 above and ordering seizure and destruction of all such merchandise wherever found.

4. Such other and further relief that this Court deems to be reasonable, necessary and just.

DATED this 16th of February, 2024

Respectfully submitted,

*/s/ Kenneth A. Feinswog*
Attorney for Plaintiffs
California State Bar No. 129562
Appearing Pro Hac Vice
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 846-5800
kfeinswog@gmail.com

**EXHIBIT A**

| DATE | VENUE |
|---|---|
| February 27 & 28, 2024 | Footprint Center, Phoenix, AZ |
| March 1 & 2, 2024 | Chase Center, San Francisco, CA |
| March 5, 2024 | Golden 1 Center, Sacramento, CA |
| March 7, 2024 | Moda Center, Portland, OR |
| March 9, 2024 | Climate Pledge Arena, Seattle, WA |
| March 13, 14 & 15, 2024 | Crypto.com Arena, Los Angeles, CA |
| March 20, 2024 | Ball Arena, Denver, CO |
| March 23, 2024 | Target Center, Minneapolis, MN |
| March 26, 2024 | T-Mobile Center, Kansas City, MO |
| March 28, 29 & 30, 2024 | United Center, Chicago, IL |
| April 6, 2024 | April 6, 2024, Detroit, MI |
| April 9, 2024 | Capital One Arena, Washington, DC |
| April 11, 12 & 13, 2024 | Barclays Center, Brooklyn, NY |

| | | |
|---|---|---|
| 1 | April 17, 2024 | TD Garden<br>Boston, MA |
| 2 | | |
| 3 | April 19, 2024 | Wells Fargo Arena<br>Philadelphia, PA |
| 4 | | |
| 5 | April 20, 2024 | XL Center<br>Hartford, CT |
| 6 | | |
| 7 | April 22, 2024 | KFC Yum! Center<br>Louisville, KY |
| 8 | | |
| 9 | April 24, 2024 | BOK Center<br>Tulsa, OK |
| 10 | April 26 & 27, 2024 | Moody Center ATX<br>Austin, TX |
| 11 | | |
| 12 | April 30 & May 1, 2024 | Toyota Center<br>Houston, TX |
| 13 | | |
| 14 | May 3 & 4, 2024 | American Airlines Center<br>Dallas, TX |
| 15 | | |
| 16 | May 7, 2024 | Smoothie King Center<br>New Orleans, LA |
| 17 | May 10, 2024 | Spectrum Center<br>Charlotte, NC |
| 18 | | |
| 19 | May 11, 2024 | Bridgestone Arena<br>Nashville, TN |
| 20 | | |
| 21 | May 14 & 15, 2024 | State Farm Arena<br>Atlanta, GA |
| 22 | | |
| 23 | May 17 & 18, 2024 | Kia Center<br>Orlando, FL |
| 24 | | |
| 25 | May 21, 2024 | Amatie Arena<br>Tampa, FL |
| 26 | May 24, 25 & 26, 2024 | Kaseya Center<br>Miami, FL |
| 27 | | |
| 28 | | |