**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stensrud Incorporated, et al., | No. CV-24-00334-PHX-DJH |
| Plaintiffs, | **TEMPORARY RESTRAINING ORDER** |
| v. | |
| Unknown Parties, | |
| Defendant. | |

On February 20, 2024, Plaintiff Stensrud, Inc., ("Plaintiff Stensrud") and Plaintiff Benito Antonio Martinez Ocasio a/k/a Bad Bunny ("Plaintiff Bad Bunny") (collectively, "Plaintiffs") filed an "*Ex Parte* Motion for an Order to Show Cause on Motion for Preliminary Injunction ("PI") with Temporary Restraining Order ("TRO") and Order of Seizure" (Doc. 7) ("the *Ex Parte* Motion"). The Motion argues that Defendants Various John Does, Jane Does and ABC Companies (collectively, the "Unauthorized Merchandisers") travel from state to state while following Plaintiff Bad Bunny's concerts and selling unlicensed and infringing merchandise that bear the BAD BUNNY trademark, likeness, and logos. Plaintiffs seek a TRO that restrains the Unauthorized Merchandisers from doing so at Plaintiff Bad Bunny's upcoming concerts at the Footprint Center in Phoenix, Arizona on February 27 and 28, 2024 (the "Footprint Center Concerts"), as well as all other concerts associated with Plaintiff Bad Bunny's 2024 tour (the "2024 Concert Tour").

///

The Court held TRO Hearing on Plaintiffs' *Ex Parte* Motion on February 22, 2024[1] (Doc. 11) and found cause to partially grant the TRO. The Court granted Plaintiffs injunctive relief as to the Footprint Center Concerts, but declined Plaintiffs' request that injunctive relief be effective nationwide. (*Id.*) The Court also set a Preliminary Injuncting Hearing on February 29, 2024 at 10:00am. (*Id.*) The following is an Order formalizing the Court's oral ruling.

## I. Background

The present TRO is based on Plaintiffs' claim under the Lanham Act, 15 U.S.C. § 1125(a), against the Unauthorized Merchandisers' infringing use of the BAD BUNNY trademark. (Doc. 1 at ¶¶ 15–26). Plaintiff Bad Bunny has used the BAD BUNNY trademark, Registration No. 77245510, to identify his services as a musical performer since 2016. (Doc. 1 at ¶ 5, 10). To date, 50 million dollars worth of licensed BAD BUNNY merchandise has been sold. (*Id.* at ¶ 9). Plaintiff Bad Bunny granted Plaintiff Stensrud the exclusive rights to sell or license the sale of BAD BUNNY merchandise during the 2024 Concert Tour. (*Id.* at ¶ 9). The 2024 Concert Tour will take place at various locations throughout the United States from February–May 2024. (*Id.* at 9–10).

The Unauthorized Merchandisers are independent "peddlers" and manufacturing and distributing companies whose identities are unknown to Plaintiffs. (*Id.* at ¶ 7, 3–4). Plaintiffs allege that, "based on what has occurred on this [2024 Concert Tour] and prior tours" the Unauthorized Merchandisers will attempt to sell "imitation and inferior Bootleg Merchandise" bearing the BAD BUNNY trademark outside of the venues at which Plaintiff Bad Bunny will be performing, including at the Footprint Center Concerts. (*Id.* at ¶ 12, 7). Plaintiffs further claim that the Unauthorized Merchandisers are conspiring to travel and follow the other concerts associated with Plaintiff Bad Bunny's 2024 Concert Tour. (*Id.* at ¶ 3–4).

Plaintiffs' *Ex Parte* Motion seeks a TRO and seizure order against the Unauthorized Merchandisers to restrain their unlawful activity.

---

[1] Plaintiffs were the only parties to attend the hearing.

## II. Legal Standard

Federal Rules of Civil Procedure 65(b) authorizes a court to issue an *ex parte* temporary restraining order without written or oral notice to the adverse party or its attorney only if the following threshold requirements are met:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)–(B). While the Supreme Court has cautioned that there are "extremely limited" circumstances that justify the issuance of an *ex parte* order, *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423 (1974), such an order may be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir.1984)). An *ex parte* TRO is also proper where notice to the defendant "would render fruitless the further prosecution of the action," such as by creating the risk that defendant would dispose evidence before the hearing if given notice. *Id.*

When a movant has met the threshold requirements for an *ex parte* TRO, the court must next consider whether the movant has met the substantial requirements for a TRO. The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). Preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the plaintiff's favor, and (4) that the public interest favors injunctive relief. *Id.* at 20.

The movant carries the burden of proof on each element of the test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). Relevant to this case, Section 1116 of the Lanham Act authorizes courts to grant injunctions to prevent the violation of any right of the registrant of a mark registered in the Trademark Office. 15 U.S.C. § 1116(a).

The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135. "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id*. at 24 (citations omitted).

**III.   Discussion**

In their *Ex Parte* Motion, Plaintiffs request this Court to issue a TRO and seizure order that (1) restrains the Unauthorized Merchandisers from manufacturing, distributing and selling their infringing and imitative BAD BUNNY merchandise at all concerts associated with the 2024 Concert Tour, including the Footprint Center Concerts; and (2) orders United States Marshals and other law enforcement authorities to seize any such infringing merchandise that is sold outside of any concert associated with the 2024 Concert Tour. (Docs. 7; 7-2). The Court will grant the Plaintiffs' *Ex Parte* Motion in part and issue a TRO and seizure order on unauthorized merchandise sold outside of the Footprint Center Concerts. Plaintiffs have met the threshold requirements set forth in Rule 65(b) and consideration of the *Winter* factors presently weighs in the Plaintiffs' favor as to

Unauthorized Merchandisers anticipated infringing activity in Arizona. However, the Court will deny the Plaintiffs' request for nationwide injunctive and revisit such request at the Preliminary Injunction Hearing.

### A.     Threshold Requirements for an *Ex parte* Temporary Restraining Order

The Court is satisfied that Plaintiffs have met the threshold requirements for an *ex parte* TRO under Rule 65(b) and establishes sufficient jurisdiction over the Unauthorized Merchandisers for TRO purposes.

First, issuance of a TRO *ex parte* against the Unauthorized Merchandisers is warranted because Plaintiffs represent they cannot identify the Unauthorized Merchandisers until they actually appear at the Footprint Center Concerts. (Doc. 7 at 2). Plaintiffs explain that is they "were to wait to identify those parties and give them notice of this Motion, the concerts already would have occurred and they would have sold their infringing merchandise and traveled on to the next concert without Plaintiffs having had the opportunity to seize the infringing merchandise" (*Id.* at 2). Plaintiffs further maintain the Unauthorized Merchandisers would remain immune from judicial process without *ex parte* relief. (Doc. 7-2 at 5). Indeed, *ex parte* relief is justified "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131 (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir.1984)). Second, in terms of due process, the Court finds it may properly exercise jurisdiction over the Unauthorized Merchandisers because Plaintiffs claim they will be physically present in Phoenix, Arizona to sell unlawful BAD BUNNY merchandise at the Footprint Center Concerts.

Therefore, the Court is satisfied that Plaintiffs have met the threshold and jurisdictional requirements for an *ex parte* TRO.

### B.     Substantive Requirements for a Temporary Restraining Order

Plaintiffs have also met the substantive requirements for a TRO under the four *Winter* factors because they have shown a likelihood of success on the merits of their

trademark infringement claims, a likelihood of irreparable harm, that the balance of equities tip in their favor, and that a TRO would further the public interest. However, at this juncture, Plaintiffs have not shown how a nationwide TRO is narrowly tailored and proportional to the scope of the issues to be tried in the case.

### 1. Likelihood of Success on the Merits

First, Plaintiffs sufficiently show a likelihood of success on the merits for their trademark infringement claim against the Unauthorized Merchandisers. The Lanham Act "creates a federal civil cause of action for unauthorized use of a registered trademark." *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248 (9th Cir. 2017). The Act provides the following relief for trademark infringement claims:

> Any person who shall, without the consent of the registrant use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . which shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a). To support a claim for trademark infringement under the Lanham Act, Plaintiffs must show: (1) ownership in a valid, protectable trademark; and (2) that the Unauthorized Merchandisers' use of the mark in commerce is likely to cause confusion. *See Brookfield*, 174 F.3d at 1046; *see also Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 478–479 (9th Cir. 2017); *see also* 15 U.S.C. § 1114(1).

Here, Plaintiff Bad Bunny obtained a trademark registration for BAD BUNNY at Registration No. 7245510, and the mark's likeness and logos have been used widely throughout the nation. (Doc. 1 at ¶ 5, 17). An incontestable registration is "conclusive evidence of the validity of the registered mark." 15 U.S.C. § 1115(b). Plaintiffs further assert the Unauthorized Merchandisers will be selling unlicensed BAD BUNNY merchandise that is of the general nature and type as those sold by Plaintiffs directly outside of Plaintiff Bad Bunny's concerts. (Doc. 1 at ¶ 18). The close proximity of these alleged counterfeit transactions surely pose a risk of confusion as to its source of sponsorship. *See*

*Reno Air Racing Ass'n*, 452 F.3d at 1135 ("The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products."). This is especially so, given that Plaintiff Bad Bunny granted Plaintiff Stensrud the *exclusive* rights to sell or license the sale of BAD BUNNY merchandise during the 2024 Concert Tour. (Doc. 1 at ¶ 9). Thus, Plaintiffs make a *prima facie* case for their trademark infringement claim.

### 2.     Likelihood of Irreparable Harm

As to the second *Winter* factor, the Trademark Modernization Act of 2020 amended Section 1116(a) of the Lanham Act to provide a plaintiff seeking an injunction "a rebuttable presumption of irreparable harm upon a finding of a violation." Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 226, 134 Stat. 1182 (2020); *see also* 15 U.S.C. 1116(a). Indeed, Plaintiffs allege that 50 million dollars worth of licensed BAD BUNNY merchandise has been sold, to date (Doc. 1 at ¶ 9), and that the Unauthorized Merchandisers' use of the BAD BUNNY mark "is immeasurable since customers have bought and will continue to buy [the Unauthorized Merchandisers'] goods thinking that they are good produced and/or authorized by Plaintiffs. (Doc. 7-7 at 8). Plaintiffs point is well taken that these unauthorized sales detracts from the income that would otherwise be generated by Plaintiffs, the Footprint Center, and associated local, state, and federal taxes. (*Id*. at 2); (*see also* Doc. 7-2 at 4 ("[T]he bootleggers pay no royalties, and no fees to the stadium or concert hall where their illegal product is peddled, and upon information and belief, no taxes in connection with the sale of that merchandise, the bootleggers (defendants herein) are able to undercut the prices of the legitimate vendors who abide by the law in the conduct of their business activities to Plaintiffs' substantial detriment.").

The Court, however, takes issue with Plaintiffs' allegation that the same Unauthorized Merchandisers that will sell unlicensed merchandise at the Footprint Center Concerts are the same individuals that will follow Plaintiff Bad Bunny's 2024 Concert Tour and sell infringing merchandise nationwide. Because the Court is mindful of its jurisdiction and does not have sufficient information at this juncture to confirm whether

the Defendants in this case are indeed the same travelling individuals or affiliated therewith, the Court will limit the scope of the TRO to the Footprint Center Concerts only. Plaintiff may reallege their request for nationwide injunctive relief at the Preliminary Injunction Hearing with the appropriate supporting evidence.

### 3. Balance of Equities

The balance of equities factor requires courts to "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief[.]" *All for the Wild Rockies*, 632 F.3d at 1131. The Court agrees with Plaintiffs that the Unauthorized Merchandisers have no legitimate interest in the sale and retention of unlicensed goods that infringe on Plaintiffs' trademark rights. (Doc. 7-7 at 9). Indeed, Plaintiffs argue that "[b]y virtue of their inherent anonymity, [the Unauthorized Merchants] will not voluntarily obey a restraining order but would on the contrary sell their merchandise and then simply disappear into the night." (Doc. 7-2 at 5). This factor weighs in favor of injunctive relief.

### 4. The Public Interest

Similarly, the Court finds public interest favors preservation of Plaintiffs' exclusive rights in the registered BAD BUNNY trademark and protection against trademark infringement. *See Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 323 (1938) (explaining that the Lanham Act provides a national system for trademark registration and protections and "forbids the unauthorized use of [a] registered mark in foreign and interstate commerce."). "The public interest in preventing trademark infringement is avoiding confusion in the marketplace." *State 48 Recycling Inc. v. Janes*, 2022 WL 1689414, at *9 (D. Ariz. May 26, 2022) (quoting *Seed Servs., Inc. v. Winsor Grain, Inc.*, 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012); *see also CytoSport Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) ("When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation."). Plaintiff Bad Bunny has used BAD BUNNY to identify his services as a

1   musical performer since 2016 and has taken extensive efforts to register the trademark and
2   license it to authorized users such as Plaintiff Stensrud.  (Doc. 1 at ¶ 5, 9–10).  Thus,
3   Plaintiffs' request for injunctive algins with the public interest.

### C. Security for Purposes of Temporary Restraining Orders

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court may grant a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The court retains discretion to set the amount of the bond, if any, but should consider the realistic likelihood of harm to an enjoined party when doing so. *See e.g., Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (the sufficiency of bond should be considered in context of injunctive relief granted).

Because Plaintiffs are requesting the assistance from federal and state law enforcement, which are public resources, the Court will require that Plaintiffs post a $5,000 bond prior to the TRO taking effect.  This sum shall offset any amount necessary to cover the fees for the law enforcement's requested services.

### IV. Conclusion

For these reasons, the Court grants Plaintiffs' *Ex parte* Motion to the extent Plaintiffs seek to restrain the Unauthorized Merchandisers at the Footprint Center Concerts, but denies Plaintiffs' request for nationwide injunctive relief.

Accordingly,

**IT APPEARING TO THE COURT** as set forth in Plaintiffs' Complaint (Doc. 1), that Defendants, Various John Does, Jane Does and ABC Companies, their true identities being unknown, are distributing and/or are about to sell, distribute, or hold for sale clothing and other merchandise, including but not limited to concert tour t-shirts, shirts, hats, caps, bandannas and sweatpants (collectively the "Infringing Merchandise") bearing the BAD BUNNY name, trademark, likeness and logo (collectively the "Musical Performer's Trademarks") at or near the BAD BUNNY concerts at the Footprint Center, Phoenix,

Arizona on February 27 and 28, 2024, and will continue to carry out such acts unless restrained by Order of the Court; and

**IT ALSO APPEARING TO THE COURT** that immediate and irreparable injury, loss and damage will result to Plaintiffs before Defendants can be identified and given notice and their attorneys can be heard in opposition to the granting of the Temporary Restraining Order, in that Defendants are preparing to manufacture, distribute and sell Infringing Merchandise throughout the BAD BUNNY concerts at Footprint Center, Phoenix, Arizona on February 27 and 28, 2024, and that unless Defendants are enjoined from said manufacture, distribution and sale, Plaintiffs will suffer immediate and irreparable injury and harm in the form of loss of income, the dilution of the Musical Performer's Trademarks, interference with Plaintiffs' ability to exploit and market their merchandising rights, confusion in the marketplace as to the duly authorized source of BAD BUNNY merchandise and the impairment of the goodwill that Plaintiffs have in the Musical Performer's Trademarks;

**IT IS THEREFORE ORDERED** that Plaintiffs' "*Ex Parte* Motion for an Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order and Order of Seizure" (Doc. 7) is **GRANTED** in part and **DENIED** in part. Because the Court is mindful of its jurisdiction and does not have sufficient information at this juncture to confirm whether the Defendants in this case are the same individuals who are collectively traveling to follow the BAD BUNNY 2024 Concert Tour and sell Infringing Merchandise nationwide, or affiliated therewith, the Court will limit the scope of this Temporary Restraining Order to the BAD BUNNY concerts at Footprint Center, Phoenix, Arizona on February 27 and 28, 2024, only.

**IT IS FURTHER ORDERED** that Defendants, their agents, servants, employees, attorneys, successors and assigns and all persons, firms and corporations acting in concert with them are temporarily restrained from manufacturing, distributing and selling Infringing Merchandise bearing the Musical Performer's Trademarks. This Temporary Restraining Order shall expire in **seven (7) days.**

**IT IS FURTHER ORDERED** that the United States Marshal for this District, the state police, local police or local deputy sheriffs, off duty officers of the same and persons acting under their supervision for the State of Arizona are authorized to seize, impound (and deliver to Plaintiffs or their representatives), any and all Infringing Merchandise bearing the Musical Performer's Trademarks, including from cartons, containers or vehicles or other means of transport in which the Infringing Merchandise is found beginning six (6) hours before and continuing until four (4) hours after the BAD BUNNY concerts at Footprint Center, Phoenix, Arizona on February 27 and 28, 2024 within a five (5) mile radius of said concerts.

**IT IS FURTHER ORDERED** this Order is hereby conditioned upon Plaintiffs filing with the Clerk of this Court, an undertaking, a surety bond or a certified, cashiers or attorneys' check, credit card or cash in the amount of **$5,000.00** no later than **February 26, 2024 at 2:00 P.M.** to secure payment of such costs and damages not to exceed such sum as may be suffered or sustained by any party who is found to be wrongfully restrained hereby.

**IT IS FURTHER ORDERED** this Temporary Restraining Order is conditioned upon Plaintiffs advancing to law enforcement officers such sum as is required to cover the fees for their services, in the event that Plaintiffs seek their services in this district;

**IT IS FURTHER ORDERED** that service of a copy of this Order together with the Complaint shall be made upon Defendants by the United States Marshal, state or local enforcement authority or by any person over the age of eighteen (18) years and not a party to this action selected for that purpose by Plaintiffs, at the time of the seizure provided herein is effected and that such service shall be deemed good and sufficient.

**IT IS FURTHER ORDERED** the process server shall offer a receipt to each person from whom merchandise is seized and that Plaintiff Stensrud, Inc. shall be deemed substitute custodian for all Infringing Merchandise seized;

**IT IS FURTHER ORDERED** that each and every Defendant served with a copy of this Order shall promptly, courteously and peaceably identify himself or herself to the

aforementioned process server and that the process server or agents for Plaintiffs shall be allowed to photograph, video tape or otherwise identify the Defendant;

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 65(b)(4), any Defendant can apply to this Court to dissolve or modify this Order on two (2) days' notice or shorter notice as this Court may allow, but no such objection shall serve to suspend this Order or stay the terms hereof unless otherwise ordered by this Court.

**IT IS FURTHER ORDERED** that a Preliminary Injunction Hearing is set for **February 29, 2024, at 10:00am** in Courtroom 605, 401 West Washington Street, Phoenix, AZ 85003. At the hearing, Defendants, Various John Does, Jane Does and ABC Companies, their true identities being unknown, shall show cause on why this Temporary Restraining Order should not become a preliminary injunction enjoining Defendants from manufacturing, distributing, selling or holding for sale and authorizing seizure of all clothing and other merchandise, including but not limited to concert tour t-shirts, shirts, hats, caps, bandannas and sweatpants bearing the BAD BUNNY name, trademark, likeness and logo. Plaintiffs shall be prepared to present samples of any seized Infringing Merchandise to compare with samples of Plaintiffs' authorized and licensed merchandise. Plaintiffs shall also be prepared to present any evidence of the Defendants' identities with those identities of the individuals who are following the BAD BUNNY 2024 Concert Tour and selling Infringing Merchandise nationwide.

**IT IS FURTHER ORDERED** that Plaintiffs' request to appear remotely at the Preliminary Injunction Hearing is **GRANTED**. Plaintiffs' counsel will be provided with remote appearance instructions by separate electronic communication.

Dated this 22nd day of February, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge