**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stensrud Incorporated, et al., | No. CV-24-00334-PHX-DJH |
| Plaintiffs, | **PRELIMINARY INJUNCTION ORDER** |
| v. | |
| Unknown Parties, | |
| Defendant. | |

On February 22, 2024, the Court issued an *ex parte* Temporary Restraining Order ("TRO") (Doc. 13) [1] in favor of Plaintiff Stensrud, Inc. ("Plaintiff Stensrud") and Plaintiff Benito Antonio Martinez Ocasio a/k/a Bad Bunny ("Plaintiff Bad Bunny") (collectively, "Plaintiffs") against Defendants, various John Does, Jane Does and ABC Companies (collectively, the "Unauthorized Merchandisers"). As required by Federal Rule of Civil Procedure 65(a)(1) and (b)(3), the Court held a hearing on February 29, 2024, (the "Hearing") to determine whether the TRO should convert to a Preliminary Injunction ("PI"). In advance of the Hearing, Plaintiff filed declarations showing service was effectuated on at least eight Unauthorized Merchandisers. (Doc. 17-1). Despite this, none of the Unauthorized Merchandisers appeared at the Hearing, and the Court found cause to convert the TRO to a PI that applied to all other concerts associated with Plaintiff Bad Bunny's 2024 tour (the "2024 Concert Tour"). The following is an Order formalizing the Court's oral ruling issuing the Preliminary Injunction.

---

[1] The *ex parte* Temporary Restraining Order was limited to Plaintiff Bad Bunny's concerts that took place at the Footprint Center in Phoenix, Arizona on February 27 and 28, 2024.

1

## I.    Background[2]

2

The TRO was based on Plaintiffs' claim under the Lanham Act,
3 15 U.S.C. § 1125(a), against the Unauthorized Merchandisers' infringing use of the
4 BAD BUNNY trademark. (Doc. 1 at ¶¶ 15–26). Plaintiff Bad Bunny has used the BAD
5 BUNNY trademark, Registration No. 77245510, to identify his services as a musical
6 performer since 2016. (*Id.* at ¶ 5, 10). To date, 50 million dollars worth of licensed BAD
7 BUNNY merchandise has been sold. (*Id.* at ¶ 9). Plaintiff Bad Bunny granted Plaintiff
8 Stensrud the exclusive rights to sell or license the sale of BAD BUNNY merchandise
9 during the 2024 Concert Tour. (*Id.* at ¶ 9). The 2024 Concert Tour will take place at
10 various locations throughout the United States from February–May 2024. (*Id.* at 9–10);
11 *see also* Exhibit A attached to this Order. Plaintiffs claim the Unauthorized Merchandisers
12 are travelling from state to state to follow Plaintiff Bad Bunny's concerts and sell
13 unlicensed and infringing merchandise that bear the BAD BUNNY trademark, likeness,
14 and logos. Plaintiffs sought nationwide injunctive relief to preclude them from doing so.

15

The Court issued a TRO that restrained the Unauthorized Merchandisers from
16 selling unlicensed and infringing merchandise that bear the BAD BUNNY trademark,
17 likeness, and logos at Plaintiff Bad Bunny's concerts at the Footprint Center in Phoenix,
18 Arizona on February 27 and 28, 2024 (the "Footprint Center Concerts"). (*See generally*
19 Doc. 13). The TRO was limited in geographical scope because the Court did not have
20 sufficient information to confirm whether the Unauthorized Merchandisers in this case are
21 indeed the same travelling individuals or affiliated therewith. (*Id.* at 4). However, the
22 Court indicated it would revisit Plaintiffs' request for nationwide injunctive relief at the
23 Hearing. (*Id.*)

24

At the Hearing, Plaintiffs submitted evidence showing unauthorized merchandise
25 that was sold outside of Plaintiff Bad Bunny's concerts in Las Vegas on February 24 and
26 25, 2024 (the "Las Vegas Concerts), are identical to merchandise seized at the Footprint

27

28

---

[2] The Court's TRO contains extensive background information. (*See* Doc. 13 at 2). The Court presumes the parties' familiarity with the TRO, and as such, provides only an abbreviated version of the background facts here.

Center Concerts (*Compare* Doc. 17-2 (unauthorized Las Vegas merchandise) *with* Doc. 17-3 (unauthorized Arizona merchandise)).  Plaintiffs also submitted evidence showing that at least three individuals who were photographed selling unlicensed merchandise at the Las Vegas Concerts and at Plaintiff Bad Bunny's concert in Salt Lake City, Utah on February 21, 2024 (the "Utah Concert") were the same Unauthorized Merchandisers served at the Footprint Center Concerts.  (Docs. 17-4; 17-5; 17-6).

## II.    Legal Standard

Preliminary injunctive relief is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh in the plaintiff's favor, and (4) that the public interest favors injunctive relief.  *Id.* at 20. The movant carries the burden of proof on each element of the test.  *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.  "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (citations omitted).

///

///

## III.     Discussion

The Court will convert the prior TRO against the Unauthorized Merchandisers into a PI because consideration of the *Winter* factors presently weigh in the Plaintiffs' favor.

### 1.     Likelihood of Success on the Merits

First, the Unauthorized Merchandisers' acts likely constitute trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a).  The Act "creates a federal civil cause of action for unauthorized use of a registered trademark."  *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1248 (9th Cir. 2017).  To establish a *prima facie* case for trademark infringement, Plaintiffs must show: (1) ownership in a valid, protectable trademark; and (2) the defendant's unauthorized use of the mark in commerce is likely to cause confusion.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *see also* 15 U.S.C. § 1114(1).

Plaintiffs have established proof of ownership because Plaintiff Bad Bunny registered the BAD BUNNY trademark in the federal Principal Register at No. 77245510 (Doc. 1 at ¶ 5, 10),  and  Plaintiff Bad Bunny granted Plaintiff Stensrud the exclusive rights to sell or license the sale of merchandise bearing the BAD BUNNY trademark during the 2024 Concert Tour, (*id.* at ¶ 9).  *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ("Registration of a mark is *prima facie* evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration.") (citing 15 U.S.C. § 1115(a)).  Moreover, when comparing the unlicensed merchandise being sold by the Unauthorized Merchandisers (Docs. 17-2; 17-3) with the merchandise authorized by Plaintiffs (Doc. 18-1), the risk of confusion is clear.  All products feature (1) identical pictures of Plaintiff Bad Bunny; (2) the same "MOST WANTED TOUR" title in a similar font; (3) the list of venues and dates that comprise the 2024 Concert Tour; and (4) the same eye and horseshoe emblem.  (*Compare* Docs. 17-2; 17-3 *with* Doc. 18-1).  And, all products are being sold at the same concert venues, which casts uncertainty on each product's source of sponsorship.  *See Reno Air Racing Ass'n*, 452 F.3d at 1135 ("The core element of trademark infringement

is whether customers are likely to be confused about the source or sponsorship of the products.").  The Court finds that these combined circumstances support a likelihood of confusion under the factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349 (9th Cir. 1979).[3]

Plaintiffs have therefore established a *prima facie* case for their trademark claims against the  Unauthorized Merchandisers.

### 2. Likelihood of Irreparable Harm

Second, Plaintiffs will suffer irreparable injury unless the TRO is converted to a PI. Section 1116(a) of the Lanham Act provides a plaintiff seeking an injunction "a rebuttable presumption of irreparable harm upon a finding of a violation."   Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 226, 134 Stat. 1182 (2020); *see also* 15 U.S.C. 1116(a).  Indeed, Plaintiffs represent that more than 200 articles of infringing merchandise were seized at the Footprint Center Concerts alone.  Plaintiffs point is well taken that these unauthorized sales detracts from the income that would otherwise be generated by Plaintiffs, their contracted concert venues, and associated local, state, and federal taxes.

Moreover, Plaintiffs have sufficiently supplemented their request for injunctive relief with evidence confirming that the Unauthorized Merchandisers are traveling to Plaintiff Bad Bunny's nationwide 2024 Concert Tour venues to sell their infringing merchandise.  Plaintiffs have proved that at least three individuals who were photographed selling infringing merchandise at the Las Vegas Concerts and Utah Concert are the same Unauthorized Merchandisers that were served at the Footprint Center Concerts.  (Docs. 17-4; 17-5; 17-6).  Plaintiffs also submitted evidence showing that the infringing  merchandise sold outside of the Las Vegas Concerts are identical to those seized at the Footprint Center Concerts (*Compare* Doc. 17-2 (unauthorized Las Vegas merchandise) *with* Doc. 17-3

---

[3] "In determining whether confusion between related goods is likely, the following factors are relevant: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines."  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349 (9th Cir. 1979).

1    (unauthorized Arizona merchandise)).   This evidence strongly suggests that the

2    Unauthorized Merchandisers are working in concert with one another.   Thus, the Court

3    finds that a nationwide, multi-concert injunction is proper under Federal Rule of Civil

4    Procedure 65(d).   Fed. R. Civ. P. 65(d).[4]   The Court will thus convert the TRO to a PI that

5    extends to all of Plaintiff Bad Bunny's concerts associated with the 2024 Concert Tour.

6    ### 3.    Balance of Equities

7    Third, the balance of equities fall in Plaintiffs' favor because the Unauthorized

8    Merchandisers have no legitimate interest in the sale and retention of unlicensed goods that

9    infringe on Plaintiffs' trademark rights.   Nothing in the record suggests that the

10   Unauthorized Merchandisers will suffer any legally cognizable harm from the preliminary

11   injunction.   Indeed, no Unauthorized Merchandiser appeared at the Hearing to assert his or

12   her rights, although their salesmen were served.

13   ### 4.    The Public Interest

14   Last, the public interest favors preservation of Plaintiffs' exclusive rights in the

15   registered BAD BUNNY trademark and protection against trademark infringement.   *See*

16   *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 323 (1938)

17   (explaining that the Lanham Act provides a national system for trademark registration and

18   protections and "forbids the unauthorized use of [a] registered mark in foreign and

19   interstate commerce.").   "The public interest in preventing trademark infringement is

20   avoiding confusion in the marketplace."   *State 48 Recycling Inc. v. Janes*, 2022 WL

21   1689414, at *9 (D. Ariz. May 26, 2022) (quoting *Seed Servs., Inc. v. Winsor Grain, Inc.*,

22   868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012); *see also CytoSport Inc. v. Vital Pharms., Inc.*,

23   617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) ("When a trademark is said to have been

24   infringed, what is actually infringed is the right of the public to be free of confusion and

25   the synonymous right of the trademark owner to control his products' reputation.").

26
27   _____
[4] Federal Rule of Civil Procedure 65(d) authorizes a preliminary injunction order to "bind[]
     only the following who receive actual notice of it by personal service or otherwise: (A) the
28   parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other
     persons who are in active concert or participation with anyone described in Rule
     65(d)(2)(A) or (B)."   Fed. R. Civ. P. 65(d).

Plaintiff Bad Bunny has used BAD BUNNY to identify his services as a musical performer since 2016 and has taken extensive efforts to register the trademark and license it to authorized users such as Plaintiff Stensrud. (Doc. 1 at ¶ 5, 9–10). Thus, Plaintiff's request for injunctive relief aligns with the public interest.

**IV.   Conclusion**

For these reasons, the Court converts the TRO to a PI that applies to all concerts associated with Plaintiff Bad Bunny's 2024 Concert Tour.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' request that the Temporary Restraining Order (Doc. 13) be converted to a Preliminary Injunction is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants, their agents, servants, employees, successors and assigns, and all persons, firms and corporations acting in concert with Defendants are preliminary enjoined and restrained from:

(a)   using the BAD BUNNY Trademarks or any colorable imitations thereof on or in connection with the sale, offering for sale, distribution or advertising of the Infringing Merchandise;

(b)   manufacturing, distributing, selling or holding for sale any Infringing Merchandise bearing or otherwise using the BAD BUNNY Trademarks; and

(c)   aiding, abetting, encouraging or inducing others to do any of the acts herein enjoined.

This Preliminary Injunction Order shall expire on **May 26, 2024.**

**IT IS FURTHER ORDERED** that the U.S. Marshal(s) and/or state, county or local law enforcement authorities, including off duty officers of the same, for any such district in which Plaintiffs enforce this order, and persons acting under their supervision, are hereby authorized to seize, impound and deliver to Plaintiffs' representative any and all Infringing Merchandise bearing the BAD BUNNY Trademarks, including from cartons, containers or vehicles or other means of transport in which the infringing merchandise is found

beginning six (6) hours before and continuing four (4) hours after each concerts associated with the BAD BUNNY 2024 concert tour, as listed in **Exhibit A** to this Order, and within a five (5) mile radius of said concerts;

**IT IS FURTHER ORDERED** that the $5,000.00 bond that was posted by Plaintiff with respect to the Temporary Restraining Order is hereby continued to secure payment of such costs and damages not to exceed such sum as may be suffered or sustained by any party who is found to be wrongfully restrained hereunder;

**IT IS FURTHER ORDERED** that this Preliminary Injunction Order is conditioned upon Plaintiffs advancing to law enforcement officers such sum as is required to cover the fees for their services, in the event that Plaintiffs seek their services in the districts where concerts associated with the BAD BUNNY 2024 concert tour are to be held;

**IT IS FURTHER ORDERED** that service of a copy of this Order together with the Complaint shall be made upon Defendants by the United States Marshal, state or local enforcement authority or by any person over the age of eighteen (18) years and not a party to this action selected for that purpose by Plaintiffs, at the time of the seizure provided herein is effected and that such service shall be deemed good and sufficient.

**IT IS FURTHER ORDERED** that the process server shall offer a receipt to each person from whom merchandise is seized and that Plaintiffs and/or their representatives shall be deemed substitute custodians for all merchandise seized;

**IT IS FURTHER ORDERED** that each and every Defendant served with a copy of this Order shall promptly, courteously and peaceably identify himself or herself to the aforementioned process server by presenting written proof of identification to said process server and said process server or agents for Plaintiffs shall be allowed to photograph, video tape or otherwise identify the Defendant;

/ / /

/ / /

/ / /

/ / /

1    **IT IS FURTHER ORDERED** that any Defendant who is served with a copy of

2    this Preliminary Injunction and who objects to the provisions hereof may submit his or her

3    objection to this Court or otherwise move for relief from this Court, but no such objection

4    should serve to suspend this Order or stay the terms hereof unless otherwise ordered by

5    this Court.

6    Dated this 29th day of February, 2024.

7

8

9    _____
     Honorable Diane J. Humetewa
10   United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

| DATE | BAD BUNNY 2024 CONCERT TOUR VENUE |
|---|---|
| February 27 & 28, 2024 | Footprint Center<br>Phoenix, AZ |
| March 1 & 2, 2024 | Chase Center<br>San Francisco, CA |
| March 5, 2024 | Golden 1 Center<br>Sacramento, CA |
| March 7, 2024 | Moda Center<br>Portland, OR |
| March 9, 2024 | Climate Pledge Arena<br>Seattle, WA |
| March 13, 14 & 15, 2024 | Crypto.com Arena<br>Los Angeles, CA |
| March 20, 2024 | Ball Arena<br>Denver, CO |
| March 23, 2024 | Target Center<br>Minneapolis, MN |

| | | |
|---|---|---|
| 1 | | |
| 2 | March 26, 2024 | T-Mobile Center |
| 3 | | Kansas City, MO |
| 4 | | |
| 5 | March 28, 29 & 30, 2024 | United Center |
| 6 | | Chicago, IL |
| 7 | | |
| 8 | April 6, 2024 | Little Caesars Arena |
| 9 | | Detroit, MI |
| 10 | | |
| 11 | April 9, 2024 | Capital One Arena |
| 12 | | Washington, DC |
| 13 | | |
| 14 | April 11, 12 & 13, 2024 | Barclays Center |
| 15 | | Brooklyn, NY |
| 16 | | |
| 17 | April 17, 2024 | TD Garden |
| 18 | | Boston, MA |
| 19 | | |
| 20 | April 19, 2024 | Wells Fargo Arena |
| 21 | | Philadelphia, PA |
| 22 | | |
| 23 | April 20, 2024 | XL Center |
| 24 | | Hartford, CT |
| 25 | | |
| 26 | April 22, 2024 | KFC Yum! Center |
| 27 | | Louisville, KY |
| 28 | | |

| April 24, 2024 | BOK Center |
| | Tulsa, OK |
| | |
| April 26 & 27, 2024 | Moody Center ATX |
| | Austin, TX |
| | |
| April 30 & May 1, 2024 | Toyota Center |
| | Houston, TX |
| | |
| May 3 & 4, 2024 | American Airlines Center |
| | Dallas, TX |
| | |
| May 7, 2024 | Smoothie King Center |
| | New Orleans, LA |
| | |
| May 10, 2024 | Spectrum Center |
| | Charlotte, NC |
| | |
| May 11, 2024 | Bridgestone Arena |
| | Nashville, TN |
| | |
| May 14 & 15, 2024 | State Farm Arena |
| | Atlanta, GA |
| | |
| May 17 & 18, 2024 | Kia Center |
| | Orlando, FL |

May 21, 2024                    Amatie Arena
                                Tampa, FL

May 24, 25 & 26, 2024           Kaseya Center
                                Miami, FL